# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DZ BANK AG DEUTSCHE ZENTRAL-<br>GENOSSENSCHAFTSBANK,<br>FRANKFURT AM MAIN, NEW YORK<br>BRANCH,<br><br>  *Plaintiff*,<br><br>v.<br><br>CORNETTE INVESTMENTS, LLC and<br>SHANNON CORNETTE, individually,<br><br>  *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.  SA:13-CV-468-XR |

## ORDER

Before the Court is Plaintiff's Motion for Default Judgment.  Docket No. 11.  After due consideration of the pleadings and the relevant law, the Court GRANTS the motion.

## Background

Plaintiff alleges that on February 8, 2008, BCC agreed to loan Defendant Cornette Investments, LLC ("CI") $450,457.00, and CI executed a promissory note.[1]  Defendant Shannon Cornette ("Cornette"), the sole member of CI, executed a personal guaranty of the payment obligations of CI under the loan agreement.[2]  Plaintiff alleges that, through various agreements and assignments, "DZ Bank has full ownership of the Loan and the Personal Guaranty."

Plaintiff alleges that CI defaulted on its obligations under the Note by failing to make payments when due.  As a result, Plaintiff asserts that it demanded payment from CI and

---

[1] See Promissory Note and Agreement for Advancement of Loan, attached as Exhibit 1 to Plaintiff's Complaint,
[2] See Guaranty, attached as Exhibit 2 to Plaintiff's Complaint.

Cornette for the outstanding balance of $443,613.69, but that CI and Cornette failed to make such payment.

## Procedural History

On June 3, 2013, Plaintiff filed its Complaint alleging breach of contract and breach of guaranty claims against Defendants CI and Cornette (Docket No. 1). On June 17, 2013, Plaintiff filed proof of service with an affidavit indicating that CI was served through its registered agent on June 13, 2013. Docket No. 7. On June 17, 2013, Plaintiff filed with this Court proof of service with an affidavit indicating that Cornette was served by personal service on June 13, 2013. Docket No. 8. Defendants did not file an answer or otherwise respond to Plaintiff's complaint. On July 23, 2013, Plaintiff moved for entry of default Docket No. 9, which was entered by the clerk of this Court. Docket No.10. On August 7, 2013, Plaintiff moved for default judgment. Docket No. 11.  To date, Defendants have not responded to Plaintiff's motion.

## Standard of Review

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default." After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).  However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages.  The Court examines each in turn.

2

**Analysis**

**A. Jurisdiction**

When a party is seeking entry of default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001)(quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). Federal courts have subject matter jurisdiction over any civil actions that involve a question of federal law, or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. For purposes of determining diversity of citizenship, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010).

In this case, the original action was brought in federal court by the Plaintiff pursuant to diversity jurisdiction.  Plaintiff states in its Complaint that it is a bank registered under the laws of Germany and that its principal place of business in the United States is in New York.  Further, Plaintiff asserts that CI was a limited liability corporation incorporated in Texas with its principal place of business in Texas, and that Cornette was the sole member of CI. Cornette is a citizen and resident of Texas.  Additionally, Plaintiff seeks to recover damages in the amount of $443,613.69, plus attorney's fees.  Accordingly, the Court concludes that the parties are diverse, and that the amount in controversy exceeds $75,000. As such, this Court has subject matter jurisdiction over this case.

Regarding personal jurisdiction, defendants are citizens and residents of Texas and were personally served with process in Texas.  Accordingly, this Court has personal jurisdiction over Defendants.[3]

## B.  Liability

When a defendant fails to respond, his default is considered an admission of the plaintiff's well-pleaded allegations of fact related to liability. *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002)(quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). However, while the allegations are presumed to be true, the court has a responsibility to determine whether the well-pleaded facts state a claim upon which relief may be granted. *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x. 860, 863 (11th Cir. 2007).

Plaintiff alleges a claim for breach of contract against Defendant CI.  The essential elements of a breach of contract claim are "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) (quoting *Commercial Credit Corp. v. Harris,* 510 P.2d 1322 (Kan. 1973)).[4] Here, Plaintiff alleges that a valid loan agreement supported by sufficient consideration exists between

---

[3] The Agreement for Advancement of Loan (Plaintiff's Exhibit 1), contains a provision that, "at the option of Lender, jurisdiction and venue for any dispute . . . in relation to this agreement will lie only in Kansas . . ." (Agreement for Advancement of Loan at paragraph 39).  This Court finds that Plaintiff, who is essentially the Lender, has elected to not exercise its option to set venue in Kansas.  Even if the provision in the loan agreement were to be construed as a mandatory forum selection clause, however, it would be a waivable defense and would not affect this Court's jurisdiction.  Defendants, by their default have waived any objection to venue. *See Novatel, Ltd. v. Infinitbox Internacional*, Civ. A. No. SA-12-CV-186-XR (Docket No. 10) at 4 (W.D. Tex. Oct. 23, 2012).

[4] Pursuant to the loan agreement, disputes arising out of the loan are governed by Kansas law (see Agreement for Advancement of Loan at paragraph 39, Plaintiff's Exhibit 1).

the parties; that Plaintiff performed its obligations under the contract; that Defendant breached the loan agreement by failing to make payments as required; and that Defendant's breach caused Plaintiff injury because it did not receive monies owed to it. Accordingly, the Court concludes that Plaintiff's Complaint pleads facts to support all elements of a breach of contract claim.

Plaintiff has also asserted a breach of guaranty claim against Defendant Cornette. "The elements for a breach of guaranty claim include: (1) the existence of a guaranty agreement between the parties, (2) consideration, (3) the plaintiff's performance or willingness to perform its obligations under the guaranty agreement, (4) the defendant's breach of the guaranty agreement, and (5) damages." *Thrivent Fin. for Lutherans v. Botwin Family Partners, L.P.*, 12-2720-CM, 2013 WL 1092983 (D. Kan. Mar. 5, 2013). Here, Plaintiff alleges that a valid guaranty agreement supported by consideration exists between the parties; that Plaintiff has performed its obligations under the guaranty agreement; that Defendant breached the guaranty agreement by failing to perform her obligations contained therein; and that Defendant's breach caused Plaintiff injury because it did not receive monies owed to it. Accordingly, the Court concludes that Plaintiff's Complaint pleads facts to support all elements of a breach of guaranty claim.

## C. Damages

When a court awards damages to a plaintiff in a default judgment case, the amount "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). In its Complaint, Plaintiff seeks actual damages in the amount of $443,613.69 and attorney's fees. Based on Plaintiff's pleadings and the affidavit of the Senior Vice President of

DZ Bank[5], $443,613.69 is the amount outstanding of the original loan of $450,457.00. Accordingly, the Court concludes that the amount of requested damages is appropriate.[6]

### D. Attorney's Fees

Plaintiff requests attorney's fees in the amount of $2,175.00 for 8.7 hours of work at an hourly rate of $250.00. Plaintiff's attorney has submitted an affidavit with a detailed fee statement attached.[7]

Before awarding attorney's fees to a party, a court must consider the reasonableness of the amount of fees being requested. *Maverick Indus., Inc. v. Am. Teleconferencing Servs., Ltd.*, 12-10102, 2013 WL 1799960 (5th Cir. Apr. 30, 2013). The Court considers the following factors when assessing an award of attorney's fees: (1) the time and labor required for litigation; (2) the novelty and difficulty of the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and abilities of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). However, not every factor will always be relevant to each case. *Maverick* at 2.

The present case involves a defaulting party and while it was unnecessary for Plaintiff's counsel to engage in more time consuming aspects of litigation such as discovery, Plaintiff's

---

[5] Attached to Plaintiff's Request for Default Judgment as Exhibit A

[6] "The measure of damages recoverable for a breach of contract is limited to such as may fairly be considered as arising in the usual course of things from the breach itself, or as may reasonably be assumed to have been within the contemplation of the parties as the probable result of such a breach." *Denman v. Aspen Drilling Co.*, 520 P.2d 1303, 1306 (Kan. 1974).

[7] Attached to Plaintiff's Request for Default Judgment as Exhibit B

counsel was required to invest time and labor to review the contracts and security agreements related to this action; identify and locate Defendants; draft and file Plaintiff's Complaint and subsequent motions; and review, organize and prepare supporting exhibits and affidavits. Weighed in light of the Court's experience, the Court finds that the 8.7 hours spent by Plaintiff's counsel is a reasonable amount of time and labor to expend for this type of litigation.

Plaintiff is represented in this matter by Askounis & Darcy, P.C. as lead counsel and Padfield & Stout, L.L.P. was engaged as local counsel.[8] Askounis & Darcy, P.C. is a Chicago-based firm that represents clients including banks and finance companies in matters of commercial litigation and collections, among others. Askounis & Darcy, http://www.askounisdarcy.com (last visited Sep. 9, 2013). Plaintiff's counsel is skilled and qualified to pursue this case. The issues presented in this matter should not be considered novel or particularly difficult, nor is the case undesirable.

In determining a reasonable hourly rate for legal services, this Court takes judicial notice of the State Bar of Texas Department of Research and Analysis Annual Hourly Rate Report ("Rate Report"). *See Alvarez v. AMB-Trans Inc.*, Civ. A. No. SA-11-CV-179-XR at 2 (W.D. Tex. Mar. 4, 2013). The Rate Report details attorney hourly rates by years in practice, location, and type of practice.[9] Plaintiff's attorney indicates she graduated from law school in 2010. According to the most recent Rate Report, the average hourly rate for an attorney with 3-6 years of experience in the San Antonio area is $188. However, the Court also looks to the nature of the litigation in determining an appropriate hourly rate. The Rate Report includes two categories to which this action could be classified: Creditor-Debtor and Commercial Litigation. The average

---

[8] Affidavit of Allison Kahrnoff in Support of Attorney's Fees attached to Plaintiff's Request for Default Judgment as Exhibit B.

[9] http://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends (last visited Sep. 9, 2013).

hourly rate for creditor-debtor practice in the San Antonio area is $194; for commercial litigation it is $239. The present case involves complex security agreements between multiple corporate entities; as a result, this case should not be viewed solely as a typical two party creditor-debtor action. Taking into account the years of experience of Plaintiff's attorney, the nature of the litigation, and the customary rates in the San Antonio area, the Court finds an hourly rate of $207 to be reasonable for this case.[10]

In light of the factors mentioned previously and the Court's own knowledge and experience, the Court concludes that an award of attorney's fees in the amount of $1,800 is reasonable and appropriate.

### Conclusion

The Court hereby GRANTS Plaintiff DZ Bank's Motion for Default Judgment (Docket No. 11) against Defendants Cornette Investments, LLC and Shannon Cornette. Plaintiff is entitled to damages in the amount of $443,613.69 and attorney's fees in the amount of $1800. Judgment shall issue separately according to Rule 58. Plaintiff is awarded its costs of court and shall file a Bill of Costs pursuant to the Local Rules.

SIGNED this 11th day of September, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[10] This amount was arrived at by determining the average of the 3 different hourly rates that could reasonably be applied to this case: $188, $194, $239.